IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CHRISTOPHER J. KNIGHTS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 07-416 -CWD |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Respondent. | ) | |

---

### Introduction

Currently pending before the Court for consideration is Petitioner CHRISTOPHER J. KNIGHTS' ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed October 4, 2007. The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the administrative record (AR), and for the reasons that follow, will remand the decision of the Commissioner.

### I.
### Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on July 15, 2003, alleging disability due to diabetes, sleep apena, venous stasis, ankle deformity, degenerative joint disease in the right knee, hypertension, nerve damage and asthma. Petitioner's application was denied initially and on reconsideration, and a request for a

hearing was timely filed.

Administrative Law Judge (ALJ) Lloyd E. Hartford held a video hearing on August 16, 2005, taking testimony from Petitioner and vocational expert Anne Aastum.  (AR 631-696.) ALJ Hartford issued a decision finding Petitioner not disabled on March 28, 2006.  (AR 11-18.)

Petitioner filed a timely appeal to the Appeals Council which denied his request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 4-6.)  Petitioner appealed the Comissioner's final decision to this Court.  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 47 years of age.  He has an AA degree in electronics and his past relevant work included supply operations support supervisor or warehouse supervisor.   Petitioner passed away on October 13, 2007.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of July 11, 2003.

At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found that Petitioner had the following severe combination of impairments: morbid obesity, diabetes mellitus, asthma, sleep apnea, hypertension, hyperlipidemia, degenerative joint disease of the right knee, post-traumatic degenerative joint disease of the left ankle, history of gout, history of peripheral edema, venous stasis without ulcerations or brawny edema, mild right

side heart failure controlled with medication, and history of L4-5 bulging disc.[1] As such, the ALJ concluded that the impairments and "related symptoms including some pain or discomfort" were "severe" within the applicable regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was able to perform his past relevant work as a warehouse supervisor. In the alternative, the ALJ found that the Petitioner could perform other work existing in significant numbers in the national economy.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Having found Petitioner not disabled at step four, the ALJ did not proceed to step five.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a

---

[1] This list does not include all of the impairments listed on Petitioner's application but does include impairments that arose after Petitioner submitted his application on July 15, 2003.

**Memorandum Decision and Order - Page 3**

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Id.* It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court

"may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala,* 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at the second and fourth steps of the process. He specifically contends that the ALJ did not consider his chronic kidney disease at Step Two. Petitioner also asserts that, at Step Four, the ALJ failed to properly account for Petitioner's medications and accompanying side-effects, his kidney disease, his obesity, and his other physical limitations. Further, Petitioner contends that the ALJ discredited the medical opinions of two treating physicians, the State Consultative Physician, a nephrology specialist, the determination of the Veterans Administration ("VA"), as well as the testimony of the vocational expert regarding these discredited opinions. The Court will address each of these arguments in turn.

### A.    ALJ's Evaluation of Petitioner's Chronic Kidney Disease

Petitioner alleges that the ALJ erred in finding that Petitioner's chronic kidney disease was not one of his severe impairments. Specifically, the ALJ found that the Petitioner's renal

failure was not a severe impairment, because "his episode of gross hematuria cleared, and although his renal function was evaluated by a specialist, his lab results are essentially within normal limits." (AR 18.)  Additionally, based on the same incident on July 24, 2004, the ALJ concluded that Petitioner's kidney disease responded to treatment. (AR 18.) Petitioner argues that, because the ALJ considered only the one incident of renal failure that occurred on July 24, 2004, his conclusions are not based on substantial evidence and therefore, not supported by the rest of the record.  The Court agrees.

For an impairment to meet the "severity" requirement, it must "significantly limit" one's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Basic work activities include physical functions such as walking, standing, sitting, and lifting; capacities for seeing, hearing and speaking; understanding, remembering, and carrying out simple instructions; using judgment; responding appropriately in a work situation; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).  Medical and other evidence must be furnished to establish the existence of the disability.  *Bowen*, 482 U.S. at 146.  For most listed impairments, "the evidence must show that the impairment has lasted or can be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 404.1525(c)(4).

In his decision the ALJ stated:

> The medical evidence shows that the claimant was hospitalized overnight with an episode of gross hematuria on July 24, 2004.  He was taken off many of his medications with a spontaneous improvement in his renal function, and the gross hematuria resolved to microscopic hematuria.  About a month later on September 2, 2004, he was referred for renal examination to Dr. Nagraj Narasimhan, a nephrologist....  Dr. Narasimhan related the kidney disease to early diabetic nephropathy versus analgesic nephropathy, and recommended not using the Motrin and Celebrex. (AR 20.)

**Memorandum Decision and Order - Page  6**

In addition to this event of gross hematuria, and Dr. Narasimhan's opinion that Petitioner had diabetic onset of renal disease,[2] medical records for treatment after July 24, 2004 demonstrate that Petitioner's chronic kidney disease was a continuous and documented concern.  Several of the progress notes during 2005 reference Petitioner's renal failure, specifically describing how the renal failure progressively worsened over the fall of 2005[3] and culminated in hospitalization of Petitioner between March 3, 2006 and March 9, 2006. (AR 446, 450, 458-462, 463, 468.) While Petitioner's gross hematuria may have resolved on the one occasion in July of 2004 when he was taken off other medications necessary to treat his pain, the ALJ failed to consider the medical records regarding Petitioner's chronic kidney disease as a whole, including the later events of renal function insufficiency and failure.  Accordingly, the ALJ's decision was not supported by substantial evidence and the ALJ committed error at step two of the sequential process.

**B.      ALJ's Evaluation of Petitioner's Credibility**

Petitioner argues that there was no explanation given for rejecting Petitioner's complaints and his testimony concerning  pain, physical limitations, and the side effects of his medications. He specifically argues that the ALJ rejected his testimony and other evidence regarding his fatigue, difficulty concentrating and frequent urination, and the resulting impact of these limitations upon his physical and mental capacity to sustain work.

The ALJ is responsible for determining credibility, resolving conflicts in medical

---

[2] Petitioner also argues that the ALJ improperly discounted Dr. Narisimhan's report. This argument is addressed later herein.

[3] As evidenced by the post-hearing records, Petitioner's kidney problems worsened after Petitioner testified at the hearing on August 15, 2005, that he had not had any specific kidney problems since 2004.

evidence, and resolving ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The

ALJ's findings must be supported by specific, cogent reasons.  *Reddick*, 157 F.3d at 722.  If a

claimant produces objective medical evidence of an underlying impairment, an ALJ may not

reject a claimant's subjective complaints of pain based solely on lack of medical evidence.

*Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  *See also Light v. Soc. Sec. Admin*., 119

F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the

basis that there is no objective medical evidence that supports the testimony.)  Unless there is

affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing

reasons for rejecting pain testimony.  *Burch*, 400 F.3d at 679.  General findings are insufficient;

the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The reasons an

ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the

record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

  In evaluating credibility, the ALJ may engage in ordinary techniques of credibility

evaluation, including considering claimant's reputation for truthfulness and inconsistencies in

claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities,

claimant's work record and testimony from physicians and third parties concerning the nature,

severity and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d

947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider:  location, duration and frequency of

symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of

medications; and treatment measures taken by claimant to alleviate those symptoms.  *See* Soc.

Sec. Ruling 96-7p.

In his decision, the ALJ did not point to any evidence of malingering, finding Petitioner "generally credible excepting his subjective allegations that his symptoms and limitations from his impairments preclude all types of work activity." (AR 26.) In discounting Petitioner's credibility, the ALJ concluded that Petitioner's ailments were well controlled or resolved with medication, his ailments were longstanding, and Petitioner's daily activities contradicted a finding of disability.

First, the ALJ's decision relied heavily upon his conclusion that the Petitioner's ailments-specifically diabetes, asthma, hypertension, lower extremity edema, left ankle and right knee degenerative joint disease and gout, as well as Petitioner's symptoms, including pain and edema, were controlled or managed with medications. (AR 18.)  However, the ALJ did not make any specific findings about or discuss the side effects of the numerous medications taken by Petitioner when assessing his credibility and the potential impact of the medications on Petitioner's ability to sustain employment.

In contrast to the ALJ's findings, there is significant evidence in the record describing the number of Petitioner's medications. (AR 209,218, 237, 347-369, 415, 418-420, 427-431.) For example, on September 2, 2004, the date of Dr. Narasimhan's nephrology consultation, Petitioner was taking Prednisone, Flovent, Serevent, Albuterol, Singulair, Ibuprofen, Colchicine, Dura-Tuss, Lisinopril, Furosemide, Celebrex, Lantus, Humalog, Nizoral, Viagra, Duragesic, Capsaicin, Amitriptyline, Simvastatin, Patanol, Metformin, and Aspirin. (AR 436.)  Particularly relevant are the side effects of the pain medications taken by Petitioner beginning in

approximately March 2003, including Celebrex, Vicodine,[4] Morphine and Codine, which Petitioner claims caused him to be almost constantly drowsy, unable to drive, and limited his ability to concentrate or think. (AR 71, 76-77, 92, 436, 646.)   Additionally, the drugs Petitioner took to combat his edema caused frequent urination, forcing Petitioner to use the restroom approximately twelve times per day and six times a night. (AR 437.)  The ALJ, without addressing the side effects of Petitioner's medications, did not articulate clear and convincing reasons for discounting Petitioner's subjective testimony regarding his limitations caused by fatigue, difficulty concentrating, and frequent urination.

The ALJ also questioned Petitioner's credibility because several of Petitioner's ailments were longstanding, existing prior to July 11, 2003 when he was laid off from his job.  The ALJ stated: "it is relevant to his credibility that the majority of the claimant's impairments including morbid obesity, and related symptoms including the back, right knee and left ankle pain or discomfort, shortness of breach, and lower extremity edema are longstanding and never precluded his ability to work." (AR 22.)  It is clear from the record that several of Petitioner's ailments were longstanding; however, the ALJ failed to address the evidence presented by Petitioner demonstrating that, during his last year of work, Petitioner was not "successfully" working, and his ailments were becoming more complex and progressively worsening.

The ALJ concluded that, because Petitioner had worked with his longstanding ailments, he had "successfully" worked.  Petitioner contends this conclusion is error, because the ALJ did not consider the evidence presented by Petitioner and his former supervisor that Petitioner was

---

[4] In January 2004, Petitioner noted that he was taking vicodine up to six times a day. (AR 413.)

having difficulties working, at least during the last year of his employment.   For example, Petitioner missed 294.5 hours or 36.8 days "due to his disability" in the twelve months prior to being laid off from his job. (AR 148.) The ALJ discredited this evidence by arguing that this was the result of Petitioner's stay in the hospital after his onset of diabetes mellitus, for which Petitioner received insulin therapy with "good effect" and without "significant complications." (AR 19, 23.) However, Petitioner testified that out of the 294.5 hours, 80 were for hospitalization for his diabetes onset and renal failure.[5] (AR 661.)  Further, Petitioner noted in his application that he missed over 160 hours of work due to illness in 2002. (AR 71.)  Petitioner noted that, in 2002, he had fallen asleep at his desk. In the daily activities questionnaire he completed in 2003, he commented that he required significant assistance from coworkers while performing his job due to difficulty walking and lifting. (AR 71, 398.) The ALJ did not discuss this evidence in his decision and pointed to no evidence inconsistent with Petitioner's assertions.

Further, Petitioner argues that the ALJ ignored the medical records and testimony that his combination of ailments progressively worsened over the years, particularly with the onset of diabetes mellitus and chronic kidney disease in 2003.  Even the VA disability ratings between 1991 and 2004, when Petitioner was declared disabled by the VA, illustrate that Petitioner's condition worsened over time.  Only Petitioner's VA disability ratings for left ankle fracture and hypertension remained the same between 1996 and 2004, while the ratings for asthma, right knee degenerative joint disease, and gout increased.  (AR 115-146.) The medical records also demonstrate that Petitioner reported increased pain associated with his right knee, elbow, hips,

---

[5] Of those eighty hours, the record indicates that Petitioners hospitalization for the onset of diabetes between May 27, 2003 and May 30, 2003 only accounts for four work days or 24 hours.  (AR 282.)

and back, as well as occasional incidents of the right knee giving way, right leg pain radiating

from his back beginning in April 2003, and worsening edema.  (AR 248, 207, 210, 227, 252,

253,422, 448, 464, 483.)  As early as 2003, Petitioner also reported difficulty sitting and standing

and by January 10, 2006, his doctor noted that Petitioner was weak enough that he could not get

out of a chair.[6] (AR 463.)

Additionally,  as noted by Petitioner's treating physician Dr. Kilfoyle, and more

specifically Dr. Narisimhan, Petitioner's ailments were complicated by his morbid obesity.

According to the medical records, it appears that Petitioners weight increased some 160 pounds

between 1996 and 2003; he weighed 240 pounds in 1996, 350 pounds around January of 2002,

and 400 pounds on January 7, 2003. (AR 384.) Although there is evidence in the record

suggesting that Petitioner's weight fluctuated after the onset of his diabetes in Spring 2003, it is

clear that he was morbidly obese from the date of his application until his death in October 2007.

 The Court concludes that, by not considering the record as a whole, specifically evidence that

Petitioner was having difficulty working in 2003 and that his longstanding impairments or

combination of impairments were progressively worsening and becoming more complex, the

ALJ's conclusion that Petitioner was not credible based on his disease history prior to July 2003

was not based on substantial evidence.

In his decision, the ALJ also discussed Petitioner's daily activities indicating they

contradicted his testimony regarding his pain symptoms and ability to work.  The ALJ concluded

that Petitioner was able to drive occasionally and help his disabled wife perform light

housework. (AR 21.)  Even if Petitioner was able to drive occasionally and perform light

---

[6] At this point in time, Petitioner requested a heavy-duty walker to assist with standing.

housework, this was not grounds to dismiss Petitioner's complaints entirely. As the Ninth Circuit has consistently held, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th cir. 1998) *citing Cooper v. Bowen* (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits), *Fair v. Bowen* 885 F.2d 597, 603 (9th Cir. 1989) (Many home activities are not easily transferable to ... the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")

Additionally, the ALJ failed to take into consideration all of Petitioner's testimony regarding his daily activities.  In 2003, Petitioner noted on his daily activities questionnaire  that he could do the dishes and help his wife straighten up around the house. (AR 89.)  However, characterizing this as Petitioner having the ability to do light housework ignores the remainder of Petitioner's contentions noting that he needed assistance with dusting, laundry, vacuuming/mopping, yard work and gardening. (AR 89.)  Petitioner also indicated that he could not put on his socks and shoes. (AR 105.)

With respect to Petitioner's ability to drive, Petitioner noted in his daily activities questionnaire in 2003 that he no longer could drive and usually rode with someone else when leaving the house.  (AR 88-90.) Additionally, Petitioner testified during the hearing in August 2005 that he could not drive well, particularly long distances, due to his sleep apnea causing him to "doze off at strange times." (AR 666.)  Petitioner also noted that the side effects of his medications further impaired his ability to drive. (AR 71.)  Nonetheless, the ALJ only noted the medical records evidencing that Petitioner had good visual acuity and Petitioner's testimony that he drove occasionally when commenting on Petitioner's ability to engage in driving activities.

**Memorandum Decision and Order - Page  13**

(AR 23.)

As stated above, it is the ALJ's job to determine credibility. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002).   If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is sound.   Here, the record lacks substantial evidence to support the ALJ's finding that the Petitioner was not fully credible, as the ALJ only selectively considered the objective medical evidence and did not consider the record as a whole.

The Court finds that, based on the above and when the record as a whole is considered, substantial evidence does not support the ALJ's finding that Petitioner was not fully credible regarding his inability to engage in work activities.

C.     **ALJ's Assessment of Physicians Opinions**

The ALJ discredited the opinions of Petitioner's treating and examining physicians, adopting those of the state doctors because, "although they did not examine the claimant, they provided specific reasons for their opinions about the claimant's residual functional capacity which were well supported by the evidence in the case record..." (AR 23.)  Petitioner argues that crediting these opinions and discounting or disregarding the opinions of Petitioner's treating and examining physicians, Dr. Kilfoyle, Dr. Jordan, Dr. Drost, and Dr. Narisimhan, was error.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. Cir. 1995).   Reports of treating physicians submitted relative to a petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and his or her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984).  Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981).

Even when a treating or examining physician's opinion is contradicted, that opinion can be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).  To satisfy this requirement, the ALJ must set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  In other words, the ALJ must do more than offer his conclusions - he must explain why his assessments, rather than those of the doctors, are correct.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).   However, an ALJ need not accept the opinion of a treating physician "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Kirk v. Astrue*, Slip Copy 2008 WL 2595178 (W.D. Was. 2008) *citing Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v.Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (2001).  Items in the record that may not

support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

First, Petitioner argues that the ALJ's lack of consideration of Dr. Kilfoyle's opinion constituted legal error. Dr. Kilfoyle was Petitioner's treating physician for over five years. Dr. Kilfoyle's opinion, as contained in his progress note dated September 2, 2004, stated:

> It is clear that Mr. Knights has several different medical problems at play. His asthma and degenerative joint disease are clear factors in limiting his exercise and contributing to his obesity and hypertension. As such, they, and in this case the treatment with NSAIDs also, are contributing to his renal insufficiency and his swelling (through diastolic dysfunction of the heart). It is likely also that the diuretic treatment of his hypertension, while it will likely benefit his blood pressure and swelling, is contributing to his renal insufficiency. Given his multiple interacting problems of asthma, degenerative joint disease, hypertension, and now renal insufficiency, with their attendant sequelae, I consider him completely and permanently disabled. (AR 456.)

Dr. Kilfoyle's opinion was contradicted by two residual functional capacity ("RFC") assessments with respect to the Petitioner's ability to work; however, the ALJ's opinion does not specifically address Dr. Kilfoyle's opinion or offer the necessary specific and legitimate reasons that would support giving Dr. Kilfoyle's opinion no weight. The sole mention of Dr. Kilfoyle's opinion in the ALJ's decision is the statement that the VA's unemployability rating in November of 2004 was based upon it. (AR 22.)

Respondent argues that the ALJ discounted Dr. Kilfoyle's opinion because "... Petitioner

had continued to work for years with these diagnoses." Response, Docket No. 15, p. 8.   Even if the Court read this conclusion into the ALJ's failure to articulate why Dr. Kilfoyle's opinion as a treating physician was not given any weight, the conclusion proposed by Respondent is not supported by substantial evidence as discussed above in relation to the ALJ's assessment of Petitioner's credibility. The ALJ failed to provide any specific and legitimate reasons for giving Dr. Kilfoyle's opinion no weight, particularly when it was corroborated by the opinions of Petitioner's other treating and examining physicians.

Further, Petitioner argues that the ALJ did not give sufficient or appropriate weight to Dr. Anthony Jordan's opinion. Dr. Jordan completed a residual functional capacity questionnaire to evaluate Petitioner's limitations and abilities in April of 2004. (AR 218- 219.) The ALJ rejected Dr. Jordan's conclusions on the basis that Dr. Jordan's "limited contact with the claimant would not lend itself to development of data to make a reliable conclusion and because it was largely on claimant's subjective statements about his alleged limitations and symptoms during a brief visit rather than objective medical findings." (AR 22.)  Petitioner testified at the hearing that Dr. Jordan treated Petitioner for "probably one year"; Dr. Jordan's RFC also notes that he was Petitioner's primary care manager or PCM. (AR 665.)  However, the ALJ offers no explanation why one year of treatment and access to medical records spanning over seven years would not be long enough for Dr. Jordan to develop enough data to reach a reliable evaluation.  (AR 218.) The ALJ's explanation of the basis for his rejection of Dr. Jordan's RFC evaluation is not persuasive, given the fact that the ALJ gave controlling weight to the opinions of two physicians who had never met nor examined the Petitioner. (AR 163-170, 171.) Thus, the Court finds that the length of treatment was not a specific and legitimate reason for rejecting Dr. Jordan's RFC assessment.

**Memorandum Decision and Order - Page  17**

The ALJ further discounted Dr. Jordan's opinion because it was based on the subjective complaints of Petitioner.  As discussed above, the ALJ erred in his credibility determination regarding Petitioners ability to engage in daily activities. Therefore, complete disregard of Dr. Jordan's opinion on that basis alone is in error.  In addition, there is only one portion of Dr. Jordan's RFC where he indicated that the limitations were based on Petitioner's report of his daily activities as opposed to objective medical findings. (AR 218.) This was the conclusion that Petitioner needs to lay down or recline for four hours each day. (AR 218.) As noted above, the ALJ may not discredit the Petitioner's testimony solely based on lack of objective medical evidence.  However, the ALJ offers no explanation for rejecting the remainder of Dr. Jordan's assessments regarding Petitioner's limitations.  The ALJ points out no inconsistency between the objective medical, clinical, and laboratory findings attached to Dr. Jordan's RFC assessment (AR 220-345) and the rest of Dr. Jordan's conclusions, including that Petitioner would need to take unscheduled breaks every fifteen minutes for five to ten minutes or that Petitioner would be absent from work three or four times a month due to his combination of impairments. (AR 219.) Thus, the Court finds that the ALJ did not offer specific and legitimate reasons for discrediting Dr. Jordan's RFC assessment.

Petitioner also argues that the ALJ erred in discrediting the opinions in the consultation report of nephrology specialist Dr. Nagraj Narasimhan.  Petitioner was referred to Dr. Narasimhan for a consultation of his renal dysfunction on September 2, 2004.  After examining Petitioner, Dr. Narasimhan concluded that Petitioner was suffering from chronic renal failure and that Petitioner "has significant disability."  (AR 439.)  He stated:

> The root cause of his disability is the obesity and related illnesses
> including diabetes mellitus, hypertension, his obstructive sleep
> apnea, and his underlying lung disease.  In addition, his

> degenerative joint disease is worsened by his morbid obesity
> prevents him from making the lifestyle changes that are so
> important in controlling the hypertension, diabetes, pulmonary
> hypertension, degenerative joint disease, and perhaps even the
> renal disease. ... Mr. Knights presents with the constellation of
> disease processes that have a very significant morbidity and
> mortality and is extremely difficult to care. (AR 439.)

In his decision, the ALJ did not discuss Dr. Narasimhan's evaluation except to briefly summarize

Dr. Narasimhan's findings and recommendations and to state that, "although his [Petitioner's]

renal function was evaluated by a specialist, his lab results are essentially within normal limits."

(AR 18.) The ALJ offered no reason, other than the lab results, for disregarding Dr.

Narasimhan's opinion.  Even if, at the time of evaluation, Petitioner's labs were within normal

limits, this does not void the rest of Dr. Narasimhan's opinion that Petitioner had chronic renal

disease, particularly in light of the later medical records demonstrating elevated creatinine levels,

and the medical reality that the combination of Petitioner's impairments made him very difficult

to treat.

Finally, Petitioner argues that the ALJ improperly discredited the opinion of Dr. Jerald

Drost, a physician asked by the Idaho Disability Determinations to conduct a general physical

examination of Petitioner and to evaluate his alleged disabilities on November 4, 2003. (AR

206.)  Dr. Drost found that Petitioner's edema was a +2, caused by heart problems and sleep

apnea.  He further noted changes in Petitioner's vision, and decreased range of motion in

Petitioner's knees and instability in the right knee consistent with diagnosed degenerative joint

disease. (AR 206-213.) Based upon these findings, Dr. Drost found that Petitioner could sit for

thirty minutes limited by low back pain that would require him to stand and move about.

Further, Dr. Drost concluded that Petitioner could walk 100 feet with his cane and approximately

10 feet  without his assistive device, and stand 10 minutes limited by lower extremity and low

**Memorandum Decision and Order - Page  19**

back pain.  (AR 212.)

The ALJ discredited Dr. Drost's analysis of Petitioner's impairments based on the fact that Dr. Drost examined Petitioner shortly after Petitioner had surgery to remove pins from his left ankle.  The ALJ assumed that this explained Petitioner's use of a cane, antalgic gait, and inability to heel walk or toe walk. (AR 20).  Although the Court agrees this assumption could be a specific and legitimate reason to reject Dr. Drost's opinion regarding Petitioner's ability to walk and his antalgic gait shortly after his ankle surgery, Dr. Drost did not limit his opinion as such.  Additionally, the ALJ's conclusion that Petitioner did not have ambulation problems unrelated to his surgery before and after this narrow time period is not supported by substantial evidence.  In fact, the medical records demonstrate that Petitioner walked with a cane from 2003 when it was first prescribed to him until his death in October 2007.[7]

The Court concludes that the ALJ failed to provide specific and legitimate reasons for rejecting, disregarding and/or discrediting the opinions of Dr. Kilfoyle, Dr. Jordan, Dr. Narasimhan, and Dr. Drost and erred in his assignment of little or no weight to these four physicians' opinions.

## D.      Veterans Administration Disability Determination

An ALJ must typically give great weight to a VA determination of disability.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  Although the ALJ is not required to adopt a VA disability rating, he must consider it in reaching his decision. *Id.*  Further, "because of the marked similarity between these two federal disability programs," the ALJ may give less weight

---

[7] The first mention in the record of Petitioner using a case is as early as May 16, 2003, several months before he had surgery to remove the hardware in his left ankle. (AR 380.) Dr. Kilfoyle also noted that Petitioner was still using the cane with a slow gait in January 2006. (AR 464.)

to the VA disability rating only if he gives "persuasive, specific, and valid reasons for doing so that are supported by the record." *Id.; see also* 20 C.F.R. § 404.1504.  In *McCartey,* the petitioner had been found to be 80% disabled by the VA and the ALJ failed to consider, or even mention, that finding in his opinion.  *Id.*  As a result, the Ninth Circuit reversed and remanded the decision of the ALJ.  *Id.*

In the instant case, the VA found Petitioner completely disabled on November 15, 2004. (AR 107- 110.) However, the ALJ discounted the VA's conclusion, because the Petitioner's medical problems were longstanding and responsive to treatment and because the VA's determination was based on the opinions of Dr. Kilfoyle and Dr. Jordan. (AR 22.)

As noted above, the ALJ may give less weight to a VA disability rating, but only if he gives persuasive, specific and valid reasons for doing so.  Here, because the ALJ did not follow the proper legal standards for discrediting the Petitioner's credibility, nor for assessing weight, if any, to Dr. Kilfoyle's and Dr. Jordans's opinions, the ALJ's reasons for discrediting the VA disability determination are neither persuasive nor valid.

**E.**    **Residual Functional Capacity to Do Past Relevant Work and Hypothetical Posed to Vocational Expert**

Because the ALJ rejected Petitioner's subjective complaints regarding his pain and side effects of medications, and also rejected the RFC assessment of Dr. Jordan, Petitioner argues the hypothetical presented to the vocational expert and relied upon by the ALJ in issuing his decision did not include all of Petitioner's limitations that were supported by the record. Petitioner therefore asserts that the ALJ's finding that he could perform sedentary work, including his past work, is in error.

At the fourth step in the sequential process, the ALJ determines whether the impairment

prevents the claimant from performing work which the claimant performed in the past, *i.e.*, whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  A claimant's residual functional capacity is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a).  An ALJ considers all relevant evidence in the record when making this determination.  *Id.* Generally, an ALJ may rely on vocational expert testimony.  20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  An ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. *Carmickle v. Comimissioner, Social Sec. Admin*, 533, F3d 1155, 1164 (9th Cir. 2008) *citing* SSR 96-8p (1996). As the Ninth Circuit has stated, the hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant supported by the record, including, for example, pain and an inability to lift certain weights.  If the vocational expert's hypothetical assumptions are incomplete or lack support in the record, the vocational expert's opinion has no evidentiary support.  *Emabrey v. Bowen,* 849 F.2d 418 (9th Cir. 1988).

Here, the ALJ concluded, basing his decision on the opinions of the state agency's reviewing medical sources, that Petitioner:

> ... could lift or carry not more than 10 pounds at a time and could occasionally lift or carry articles like docket files, ledgers, and small tools.  He could stand/walk at least 2 hours in an 8-hour workday, and could sit about 6 hours in an 8-hour workday.  He was unlimited in push/pull (other than as shown for lift/carry).  He could climb ramp/stairs, balance, stoop, kneel, crouch, crawl occasionally.  He could not climb ladder/rope/scaffolds.  He has no manipulative, visual or communicative limitations.  He could not work in uneve terrain, at unprotected heights, dangerous moving machinery, vibration.  Due to asthma he should avoid frequent exposure to fumes/dust. (AR 23.)

Vocational expert Anne Aastum found that the above described limitations would allow the

Petitioner to perform sedentary work. (AR 155.)

However, Petitioner contends that the above set of limitations did not include all of his limitations that are supported by the record and by the RFC assessment conducted by Dr. Jordan, specifically Petitioner's need to take frequent unscheduled breaks including bathroom breaks; his physical limitations due to his obesity and pain; and the likelihood that he would miss work at least a few days each month due to any number of reasons as included in the RFC assessment by Dr. Jordan.  When asked, the vocational expert agreed that, with the limitations identified in Dr. Jordan's RFC assessment, all work by Petitioner would be precluded. (AR 408-410.) As found above, the ALJ's credibility determination of Petitioner and the ALJ's rejection of Dr. Jordan's RFC assessment  were in error.  The ALJ's RFC finding, therefore, was based upon his erroneous conclusions regarding Petitioner's credibility and Dr. Jordan's opinion, and also was in error.

The Ninth Circuit recently explained how the failure to include all of the limitations supported by substantial evidence in the record can undermine the efficacy of a hypothetical question:

> As the Commissioner correctly recognizes, in hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence.  *See Osenbrock v. Apfel,* 240 F.3d 1157, 1163-65 (9th Cir.2001).  Conversely, an ALJ is not free to disregard properly supported limitations.  The ALJ's failure to account for the testimony of Robbins and his son calls into question the validity of his determination of Robbins's limitations and RFC before September 1998.  Because those determinations were flawed, the hypothetical posed to the vocational expert was legally inadequate.  *Id.*  Such a failure cannot be deemed harmless because, if the ignored testimony is credited, a proper hypothetical would have included limitations which, the record suggests, would have been determinative as to the vocational expert's recommendation to the ALJ.  Accordingly, the ALJ's step five determination is unsupported by substantial evidence.  *See id.* at

> 1163 ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.").

*Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 886 (9th. Cir. 2006).

As in *Robbins*, the Respondent's position regarding the propriety of the hypothetical question rests on the premise that Petitioner's testimony regarding his disabling pain, the side effects of his medications, other functional limitations, and Dr. Jordan's opinion were properly excluded from the hypothetical question.  However, the ALJ did not follow the proper legal standards for rejecting Petitioner's testimony regarding pain and functional limitations or Dr. Jordan's RFC assessment.  As such, the hypothetical question, which was to include all of Petitioner's limitations that were supported by substantial evidence, is an evidentiary and legal nullity.

### V.
### Conclusion

Upon review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence and is the product of legal error.  Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be remanded.

### <u>ORDER</u>

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that**:

1. Plaintiff's Petition for Review (Docket No. 1) is GRANTED.

2. This action shall be REMANDED to the Commissioner for further proceedings consistent with this opinion.

3.  This Remand shall be considered a sentence four "remand," consistent with 42 U.S.C.

405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).



DATED: March 3, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge